**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **10-00951-dd**

**ORDER**

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/12/2010**



_____

US Bankruptcy Court Judge
District of South Carolina

Entered: 03/15/2010

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 10-00951-DD |
| Oscar Frank Dorn and<br>Arrilla Corbin Dorn, | Chapter 11 |
| Debtor(s). | **ORDER** |

THIS MATTER is before the Court on Business Development Corporation's ("BDC") Motion to Dismiss and Motion for Relief from Stay (collectively "Motions"). Based upon BDC's request, the Motions were scheduled for a hearing on an expedited basis. Objections to the Motions were filed by Oscar Frank Dorn and Arrilla Corbin Dorn ("Debtors"). A hearing was held on both Motions on March 10, 2010. The Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014.

## *FINDINGS OF FACT*

Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code on February 12, 2010. Debtors do business as Saluda Farm & Garden Supply located at 508 North Main Street, Saluda, South Carolina and Johnston Farm & Hardware located at 254 Lee Street, Johnston, South Carolina. Debtors' Saluda location has been in operation since 1995. Debtors' operation in Johnston began in January of 2008.

On October 21, 2004, BDC made a $325,000 loan to Debtors secured by (1) a mortgage on the business property located at 508 North Main Street, Saluda, South Carolina (Saluda Business Property"); (2) a security interest in all personal property, accounts, inventory and fixtures related to the Saluda Business Property; (3) a mortgage on Debtors' residence in Edgefield, South Carolina; and (4) a mortgage on unimproved

1

rural property in Edgefield County, South Carolina, owned by a relative of the Debtors, consisting of 20.7 acres. The BDC loan is backed by the United States Small Business Administration and payable over a 15 year term with monthly payments of principal and interest of $2,950.

Debtors business began to suffer the economic downturn in late 2008. Since November of 2008 Debtors have not paid BDC. BDC initiated a foreclosure action against the Debtors in May of 2009 in Saluda and Edgefield Counties. On January 25, 2010 a foreclosure decree was issued by the Special Referee in the foreclosure actions. The foreclosure decree ordered the sale of the Saluda Business Property, Debtors' residence, the acreage in Edgefield County, the furniture, fixtures, equipment, and inventory of the Saluda store. The foreclosure decree awarded judgment against the Debtors in the sum of $326,260.19.

BDC obtained an appraisal of the real property securing the loan to Debtors. BDC's appraisal dated February 10, 2010 was conducted by Holstein Appraisals of Batesburg-Leesville and reflects the following current property values:

    1. Residence and 6.18 acres (Edgefield County):    $127,500
    2. 20.7-acre pasture (Edgefield County):    $68,500
    3. Commercial lot and Improvements (Saluda):    $160,000

Capital Bank holds a first mortgage on Debtors' residence of approximately $89,182. The Upper Savannah Council of Governments has filed a $30,000 lien against the Debtors. Mr. Dorn testified that the value of the inventory at the Saluda Store is $175,000. No estimate was given as to the value of the furniture, fixtures, accounts and equipment associated with the Saluda store.

## *CONCLUSIONS OF LAW*

BDC seeks to have Debtors' case dismissed on grounds that their filing represents bad faith. BDC also asserts that Debtors' unauthorized use of cash collateral constitutes cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4)(D).[1] In the alternative, BDC seeks relief from the automatic stay under § 362(d)(1) and (2) of the Bankruptcy Code. The Debtors argue that their chapter 11 petition was filed in good faith. Debtors contend that while they have used cash collateral, such use has not caused substantial harm to BDC.[2] Debtors further argue that BDC is not entitled to relief from stay and offer adequate protection payments to prevent erosion of the equity cushion that protects BDC's interests.

### I.

Dismissal of a chapter 11 case for "bad faith" is not an express ground for dismissal pursuant to § 1112[3], however the Fourth Circuit has found that filing a case in

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.
[2] Debtors belatedly filed a motion for authorization to use cash collateral during the lunch recess of the hearing on BDC's Motions.
[3] Relevant portions of § 1112(b) provide:
   (1) [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances … the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
   …
   (4) For the purposes of this subsection, the term 'cause' includes—
      (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
      (B) gross mismanagement of the estate;
      (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
      (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
      (E) failure to comply with an order of the court;
      (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
      (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

3

good faith is an implicit prerequisite to the right to obtain the equitable relief offered by the Bankruptcy Code. *See Carolin Corp. v. Miller (In re Carolin Corp.)*, 886 F.2d 693, 698 (4th Cir. 1989). Courts within the Fourth Circuit are instructed to exercise great care and caution prior to entering an order of dismissal for bad faith. *Id.* at 700. A stringent two part test was adopted by the Fourth Circuit requiring the movant to demonstrate that the case is (1) objectively futile and (2) subjectively filed in bad faith. *Id.* at 700-01.

"The objective futility inquiry is designed to insure that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled debtor.'" *Id.* at 701. The objective futility test focuses on whether a realistic possibility of an effective reorganization exists. *See Maryland Port Administration v. Premier Automotive Services, Inc. (In re Premier Automotive Services, Inc.)*, 492 F.3d 274, 280 (4th Cir. 2007). The court in *Carolin* stated, "it is better to risk proceeding with a wrongly motivated, invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation." *In re Carolin Corp.*, 886 F.2d at 701.

---

(H) failure to timely provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
(K) failure to pay any fees or charges required under chapter 123 of title 28;
(L) revocation of an order of confirmation under section 1144;
(M) inability to effectuate substantial consummation of a confirmed plan;
(N) material default by the debtor with respect to a confirmed plan;
(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing petition.

4

In this case, it appears as though the Debtors' efforts to reorganize are not objectively futile based upon the budgets that were presented (Debtors' Exhibits A and B) and the testimony provided by Mr. Dorn. While the Debtors' schedules have yet to be filed in this case, Mr. Dorn's testimony established that there are multiple creditors whose interests need to be addressed. It is in keeping with the test established by the Court of Appeals that in a case such as this where futility of reorganization is not immediately evident, the Debtors should be given the opportunity to continue in their chapter 11 bankruptcy proceeding.

Another bankruptcy judge in the District of South Carolina identified a non-exclusive list of factors that may be considered in determining subjective bad faith:

(1) The debtor has one asset;
(2) Secured creditors' liens encumber the asset;
(3) There are generally no employees except for the principals and there is no ongoing business activity;
(4) The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;
(5) There are few, if any, unsecured creditors whose claims are relatively small;
(6) There are allegations of wrongdoing by the debtor or its principals;
(7) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;
(8) The debtor is afflicted with the "new debtor syndrome" in which a one asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;
(9) There is no realistic possibility of reorganization of the debtor's business;
(10) The reorganization essentially involves a two-party dispute; and
(11) Bankruptcy offers the only possibility of forestalling loss of the property.

*See In re Dunes Hotel Assocs.*, 188 B.R. 162, 171-72 (Bankr. D.S.C. 1995).

Based upon the non-exclusive factors used in this District, it appears as though Debtors' filing does not meet the subjective bad faith test. Debtors have two businesses and a home. While secured liens encumber Debtors' assets, there does appear to be an equity cushion protecting the interests of secured creditors. It is appears from Debtors'

5

budget that cash flow exists to sustain a plan of reorganization and make adequate protection payments to BDC. While it is too early in this case to identify the claims of unsecured creditors, Mr. Dorn's testimony is that there are unsecured creditors who will receive some dividend in a successful reorganization.

The only allegation of wrongdoing was the threat of filing a grievance against BDC's attorney. While counsel for BDC asserts that a threat of a grievance with the South Carolina Bar Association was used to delay the foreclosure hearing, Mr. Dorn's testimony that this was a matter of confusion and no grievance was ever filed. Mr. Dorn sought counsel from an attorney to determine whether BDC's attorney might have a conflict of interest arising from closing the Dorn/BDC loan and later serving as foreclosure counsel. It was later established that counsel represented BDC only. No other allegations of wrongdoing have been made against the Debtors. While Debtors' case was filed shortly prior to a sale of their property at foreclosure, it is a first filing by the Debtors and does not appear to an illegitimate attempt to frustrate or delay BDC. The analysis of these factors supports that this case was not filed in bad faith but with a view to reorganization.

## II.

Cause to dismiss a chapter 11 case exists where (1) a debtor uses cash collateral without consent of the secured creditor or court approval of the use of cash collateral, and (2) the creditor suffers substantial harm as a result of the unauthorized use. 11 U.S.C. § 1112(b)(4)(D). It is the movant's burden to prove both prongs of the test.

In this case BDC has failed to meet its burden as to substantial harm. The Debtors admit that they are using case collateral while their business continues as a going

6

concern.[4]  However James Page, a loan officer with BDC, testified that the Debtors' use of cash collateral had not harmed the interest of BDC.  Because BDC has failed to make a showing that the unauthorized use of cash collateral has caused them substantial harm, cause for dismissal does not exist pursuant to § 1112(b)(4)(D).

### III.

Relief from the automatic stay may be granted to a creditor when the debtor does not have equity in the property and the subject property is not necessary to an effective reorganization or where there is other cause, including a lack of adequate protection.  11 U.S.C. § 362(d)(1), (d)(2)(A) and (B).

In this case, BDC did not show that the Debtors lack equity in the property that is subject to its lien.  BDC initially offered an appraisal generated by Holstein Appraisals on February 10, 2010.  Debtors objected because the appraiser was not present.  Property appraisals are inadmissible as hearsay under Fed. R. Evidence 801 unless the appraiser is present to be cross examined.  *See* 2 Barry Russell, Bankruptcy Evidence Manual 807 (West 2009-2010).  After a recess Richard Holstein appeared and testified.  Debtors stipulated to Mr. Holstein's qualification as an expert witness to render opinions on the value of real properties.

Mr. Holstein's testimony established a value of Debtors' residence of $127,500, a value of Debtors' Saluda business property of $160,000, and a value for the acreage in Edgefield County of $68,500. Accounting for a first mortgage on Debtors' residence held by Capital Bank of $89,182 and a lien against the Debtors held by the Upper Savannah Council of Governments of $30,000, BDC argues that Debtors' have negative equity in their real property of $157,942 after the deduction of BDC's lien of $326,260.

---

[4] A hearing on the interim use of cash collateral is scheduled March 18, 2010

While BDC's assertion is true when only considering the real property held by the Debtors, BDC's loan is also secured by the inventory of Debtors' Saluda store and the furniture, fixtures and equipment of the Saluda store. Mr. Dorn's testimony established a value of the Saluda store's inventory alone of $175,000.

The evidence indicates that since November of 2008, Debtors have failed to make a payment of principal or interest to BDC. BDC further asserts that Mr. Dorn informed BDC on multiple occasions that a closing was scheduled which would result in full payment of the BDC loan. Mr. Dorn's testimony was that every attempt to refinance the debt owed to BDC including a private loan fell through. As adequate protection the Debtors have offered to pay the accruing interest, which they project to be $1,531.31 per month.

## *CONCLUSION*

Debtors' quest to reorganize is not objectively futile nor is there evidence of subjective bad faith. While Debtors have used cash collateral without authorization, the use of cash collateral has not substantially harmed BDC. The Motion to Dismiss is denied.

The Motion for Relief from Stay is likewise denied. The Debtors have equity in property over and above the BDC loan. Continuation of the stay is conditioned upon the payment of $1,531.31 per month beginning April 1, 2010, which sum shall be past due on the 10th of the month.

**AND IT IS SO ORDERED.**

8